## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

STUART E. STEINBERG                          :
5510 Newcastle Avenue, #209                  :
Encino, CA 91216                             :
                                             :
and                                          :
                                             :
THE ESTATE OF MAX D. STEINBERG               :
By and through its                           :
Special Administrator Stuart Steinberg       :
5510 Newcastle Avenue, #209                  :    Civil Action No. 1:20-cv-02996(RCL)
Encino, CA 91216                             :
                                             :
and                                          :
                                             :
EVIE R. STEINBERG                            :
5510 Newcastle Avenue, #209                  :
Encino, CA 91216                             :
                                             :
and                                          :
                                             :
PAIGE P. STEINBERG                           :
5510 Newcastle Avenue, #209                  :
Encino, CA 91216                             :
                                             :
and                                          :
                                             :
JAKE R. STEINBERG                            :
1600 S Bentley Avenue, #5                    :
Los Angeles, CA  90025                       :
                                             :
and                                          :
                                             :
JUDAH HERZEL HENKIN                          :
1 Nurok Street                               :
Jerusalem, 96109 Israel                      :
                                             :
and                                          :
                                             :
ANNE CHANA HENKIN                            :
1 Nurok Street                               :
Jerusalem, 96109 Israel                      :
                                             :
and                                          :
                                             :

1

ADERET RIVKAH HENKIN STERN       :
Tirosh 556/17       :
Jerusalem, 96357 Israel       :
      :
and       :
      :
ELIASHIR ELIJAH HENKIN       :
Kiryat Moshe 15,       :
Jerusalem 9610219 Israel       :
      :
and       :
      :
JACOB BECHOR-SHALOM HENKIN       :
1 Nurok Street       :
Jerusalem, 96109 Israel       :
      :
and       :
      :
JOSEPH GIL HENKIN       :
Carmel 20       :
Elkana, 44814, Israel       :
      :
and       :
      :
TAAMA FREIDA HENKIN YAAKOVSON       :
P.O. Box 158       :
Mitzpe Yericho, 90651       :
      :
and       :
      :
THE ESTATE OF ARI YOEL FULD       :
by and through its       :
Personal Representative and Administrator       :
Miriam Fuld       :
30 Zayit Shemen Street, Apt 1       :
Efrat Israel 9043500       :
      :
and       :
      :
MIRIAM FULD       :
30 Zayit Shemen Street, Apt 1       :
Efrat Israel 9043500       :
      :
and       :
      :
N.S.F.       :

By and through his Natural Guardian    :
Miriam Fuld    :
30 Zayit Shemen Street, Apt 1    :
Efrat Israel 9043500    :
    :
and    :
    :
NAOMI FULD    :
30 Zayit Shemen Street, Apt 1    :
Efrat Israel 9043500    :
    :
and    :
    :
TAMAR GILA FULD    :
30 Zayit Shemen Street, Apt 1    :
Efrat Israel 9043500    :
    :
and    :
    :
ELIEZAR YAKIR FULD    :
30 Zayit Shemen Street, Apt 1    :
Efrat Israel 9043500    :
    :
and    :
    :
HARVEY JONAS YONAH FULD    :
10/1 Ben Azai Street    :
Jerusalem, Israel    :
    :
and    :
    :
MARY ALICE FULD    :
10/1 Ben Azai Street    :
Jerusalem, Israel    :
    :
and    :
    :
DANIEL YAAKOV FULD    :
Kochav Hashachar    :
256 HaGat Street    :
D.N. Mizrach Binyamin, Israel    :
    :
and    :
    :
EYTAN FULD    :
P.O. Box 709    :

Tekoa, Israel                                     :
                                                  :
and                                               :
                                                  :
HILLEL CHAIM SHLOMO FULD                          :
Sitvanit 36/1                                     :
Beit Shemesh, Israel 99598                        :
                                                  :
and                                               :
                                                  :
ASHER GOODMAN                                     :
Menachem Begin 106/8                              :
Sderot, Israel                                    :
                                                  :
and                                               :
                                                  :
BATSHEVA GOODMAN                                  :
Menachem Begin 106/8                              :
Sderot, Israel                                    :
                                                  :
and                                               :
                                                  :
EPHRIAM ROSENFELD                                 :
3 Uzi Hitman Street                               :
Sderot, Israel                                    :
                                                  :
and                                               :
                                                  :
A.R.                                              :
By and through his Parents and Guardians          :
Ephriam and Kineret Rosenfeld                     :
3 Uzi Hitman Street                               :
Sderot, Israel                                    :
                                                  :
and                                               :
                                                  :
B.R.                                              :
By and through his Parents and Guardians          :
Ephriam and Kineret Rosenfeld                     :
3 Uzi Hitman Street                               :
Sderot, Israel                                    :
                                                  :
and                                               :
                                                  :
H.R.                                              :
By and through her Parents and Guardians          :
Ephriam and Kineret Rosenfeld                     :

4

3 Uzi Hitman Street                                              :
Sderot, Israel                                                  :
                                                                :
and                                                             :
                                                                :
BRACHA VAKNIN                                                   :
175 Sederot Yerushalayim                                        :
Netivot, Israel 80200                                          :
                                                                :
and                                                             :
                                                                :
S.M.V.                                                         :
By and through his Parents and Guardians                       :
Bracha and Yosef Vaknin                                        :
175 Sederot Yerushalayim                                        :
Netivot, Israel 80200                                          :
                                                                :
and                                                             :
                                                                :
E.V.                                                          :
By and through his Parents and Guardians                       :
Bracha and Yosef Vaknin                                        :
175 Sederot Yerushalayim                                        :
Netivot, Israel 80200                                          :
                                                                :
and                                                             :
                                                                :
M.V.                                                          :
By and through her Parents and Guardians                       :
Bracha and Yosef Vaknin                                        :
175 Sederot Yerushalayim                                        :
Netivot, Israel 80200                                          :
                                                                :
and                                                             :
                                                                :
S.R.V.                                                         :
By and through her Parents and Guardians                       :
Bracha and Yosef Vaknin                                        :
175 Sederot Yerushalayim                                        :
Netivot, Israel 80200                                          :
                                                                :
and                                                             :
                                                                :
A.V.                                                          :
By and through her Parents and Guardians                       :
Bracha and Yosef Vaknin                                        :

175 Sederot Yerushalayim                   :
Netivot, Israel 80200                       :
                                            :
              Plaintiffs                    :
                                            :
     v.                                     :
                                            :
REPUBLIC OF SUDAN                           :
Ministry of Foreign Affairs                 :
Khartoum, Sudan                             :
                                            :
         c/o Embassy of Sudan               :
         2210 Massachusetts Ave.            :
         Washington, DC  20008              :
                                            :
              Defendant.                    :
                                            :

## FIRST AMENDED COMPLAINT

Plaintiffs, Stuart E. Steinberg, The Estate of Max D. Steinberg, Evie R. Steinberg, Paige P. Steinberg and Jake R. Steinberg (collectively the "Steinberg Plaintiffs"); Judah Herzel Henkin, Anna Chana Henkin, Aderet Rivkah Henkin Stern, Eliashir Elijah Henkin, Jacob Bechor-Shalom Henkin, Joseph Gil Henkin and Taama Freida Henkin Yaakovson (collectively the "Henkin Plaintiffs"); The Estate of Ari Yoel Fuld, Miriam Fuld, N.S.F., Naomi Fuld, Tamar Gila Fuld, Eliezer Yakir Fuld, Harvey Jonas Yonah Fuld, Mary Alice Fuld, Daniel Yaakov Fuld, Eytan Fuld and Hillel Chaim Shlomo Fuld (collectively the "Fuld Plaintiffs"), Asher Goodman and Batsheva Goodman (collectively the "Goodman Plaintiffs"), and Ephriam Rosenfeld A.R., B.R., H.R. (collectively the "Rosenfeld Plaintiffs"), and Bracha Vaknin, S.M.V., E.V., M.V., S.R.V., and A.V. (collectively the Vaknin Plaintiffs"),  by and through undersigned counsel, bring this action against Defendant Republic of Sudan ("Sudan"). This matter is related to, *inter alia*, *Steinberg, et al. v. Islamic Republic of Iran, et. al.* Civil Action No. 17-1910 (RCL) (D.D.C.) ("Steinberg Case"), *Henkin, et al. v. Islamic Republic of Iran, et al.*, Civil Action no. 18-01273 (RCL) (D.D.C.)

("Henkin Case"), and *Fuld, et al. v. Islamic Republic of Iran, et al.*, Civil Action no. 20-02444 (RCL) (D.D.C.) ("Fuld Case") in that they involve terrorist attacks which were perpetrated by the same Foreign Terrorist Organization, Islamic Resistance Movement ("HAMAS"), and some of the same plaintiffs and same terrorist attacks, which has resulted in the death and injuries of American citizens. Plaintiffs are legally entitled to assert these claims pursuant to the Foreign Sovereign Immunities Act (28 U.S.C. § 1602 et seq.), as amended by § 1083 of the Defense Appropriations Act of 2008, H.R. 4986, Pub. L. No. 110-181; and the laws of the jurisdictions of residence of those Plaintiffs suffering injuries as hereinafter alleged.

## JURISDICTION, VENUE, AND CHOICE OF LAW

1.     This Court exercises subject matter jurisdiction in accordance with the provisions of 28 U.S.C. §§ 1330(a), 1331, 1332(a)(2), and 1605A.

2.     Defendant Sudan has been designated as a State Sponsor of Terrorism by the United States Department of State since 1993 and continues to have been so designated to the present day.

3.     Defendant Sudan is subject to suit in the courts of the United States pursuant to 28 U.S.C. § 1605A ("FSIA").

4.     Venue lies in this Court pursuant to 28 U.S.C. § 1391(f)(4), which provides, in pertinent part, that a civil action against a foreign State may be brought in the United States District Court for the District of Columbia.

5.     Actions for wrongful death, personal injury and related torts perpetrated by foreign state sponsors of terrorism through their officials, employees, and agents within the meaning of 28 U.S.C. § 1605A(c) are unique causes of actions arising out of federal counterterrorism statute(s) and are controlled by applicable federal law.

## THE PARTIES

A.  **The Plaintiffs**

6.      This action is brought by the Plaintiffs, by and through their counsel, in the individual capacity of each Plaintiff and on behalf of all those legally entitled to assert a claim under the FSIA as the estates, survivors and/or family members of Max Steinberg, Eitam Simon Henkin and Ari Fuld, all of whom are United States citizens. In support of their First Amended Complaint, Plaintiffs allege as follows:

**The Steinberg Family**

1.      Plaintiff Stuart Steinberg was, and at all times relevant hereto, the biological father of Max Steinberg, and a citizen of the United States. Max Steinberg was murdered on July 20, 2014 by a terrorist attack committed by HAMAS, a Foreign Terrorist Organization ("FTO").  Plaintiff Stuart Steinberg has suffered severe mental anguish and extreme emotional pain and suffering. Plaintiff Stuart Steinberg can sue and be sued in this Court.

2.      Plaintiff Estate of Max Steinberg, a Los Angeles County, California estate, is represented in this action by its duly appointed Special Administrator, Stuart Steinberg. Max Steinberg was murdered on July 20, 2014 by a terrorist attack committed by HAMAS, a Foreign Terrorist Organization.   At the time of the acts alleged, and at all other times relevant hereto, Max Steinberg was a citizen of the United States and his California Estate has been opened on his behalf. Max Steinberg was, at all times relevant hereto, a victim of "torture" as defined in the TVPA and "personal injury" and "death" as required by 28 U.S.C. § 1605A. Plaintiff Estate of Max Steinberg can sue and be sued in this Court.

3.      Plaintiff Evie Steinberg was, and at all times relevant hereto, the biological mother of Max Steinberg, and a citizen of the United States. Plaintiff Evie Steinberg has suffered severe mental anguish and extreme emotional pain and suffering. Plaintiff Evie Steinberg can sue and be sued in this Court.

4.      Plaintiff Paige Steinberg was, and at all times relevant hereto, the biological sister of Max Steinberg, and a citizen of the United States. Plaintiff Paige Steinberg has suffered severe mental anguish and extreme emotional pain and suffering. Plaintiff Paige Steinberg can sue and be sued in this Court.

5.      Plaintiff Jake Steinberg was, and at all times relevant hereto, the biological brother of Max Steinberg, and a citizen of the United States. Plaintiff Jake Steinberg has suffered severe mental anguish and extreme emotional pain and suffering. Plaintiff Jake Steinberg can sue and be sued in this Court.

**<u>The Henkin Family</u>**

6.      Eitam Simon Henkin was murdered on October 1, 2015 by a terrorist attack committed by HAMAS, a Foreign Terrorist Organization.   At the time of the acts alleged, and at all other times relevant hereto, Eitam Simon Henkin was a citizen of the United States and at all times relevant hereto, a victim of "torture" as defined in the TVPA and "personal injury" and "death" as required by 28 U.S.C. § 1605A.

7.      Plaintiff Judah Herzel Henkin was, and at all times relevant hereto, the biological father of Eitam Simon Henkin, and a citizen of the United States. Plaintiff Judah Herzel Henkin has suffered severe mental anguish and extreme emotional pain and suffering. Plaintiff Judah Herzel Henkin can sue and be sued in this Court.

8.      Plaintiff Anne Chana Henkin was, and at all times relevant hereto, the biological mother of Eitam Simon Henkin, and a citizen of the United States. Plaintiff Anna Chana Henkin has suffered severe mental anguish and extreme emotional pain and suffering. Plaintiff Anne Chana Henkin can sue and be sued in this Court.

9.      Plaintiff Aderet Rivkah Henkin Stern was, and at all times relevant hereto, the biological sister of Eitam Simon Henkin, and a citizen of the United States. Plaintiff Aderet Rivkah

Henkin has suffered severe mental anguish and extreme emotional pain and suffering. Plaintiff Aderet Rivkah Henkin Stern can sue and be sued in this Court.

10.     Plaintiff Eliashir Elijah Henkin was, and at all times relevant hereto, the biological brother of Eitam Simon Henkin, and a citizen of the United States. Plaintiff Eliashir Elijah Henkin has suffered severe mental anguish and extreme emotional pain and suffering. Plaintiff Eliashir Elijah Henkin can sue and be sued in this Court.

11.     Plaintiff Jacob Bechor-Shalom Henkin was, and at all times relevant hereto, the biological brother of Eitam Simon Henkin, and a citizen of the United States. Plaintiff Jacob Bechor-Shalom Henkin has suffered severe mental anguish and extreme emotional pain and suffering. Plaintiff Jacob Bechor-Shalom Henkin can sue and be sued in this Court.

12.     Plaintiff Joseph Gil Henkin was, and at all times relevant hereto, the biological brother of Eitam Simon Henkin, and a citizen of the United States. Plaintiff Joseph Gil Henkin has suffered severe mental anguish and extreme emotional pain and suffering. Plaintiff Joseph Gil Henkin can sue and be sued in this Court.

13.     Plaintiff Taama Freida Henkin was, and at all times relevant hereto, the biological sister of Eitam Simon Henkin, and a citizen of the United States. Plaintiff Taama Freida Henkin has suffered severe mental anguish and extreme emotional pain and suffering. Plaintiff Taama Freida Henkin can sue and be sued in this Court.

## The Fuld Family

14.     Plaintiff Estate Ari Yoel Fuld, a Kings County, New York estate, is represented in this action by its duly appointed Administrator, Miriam Fuld. Ari Yoel Fuld was murdered on September 16, 2018 by a terror attack committed by HAMAS, a Foreign Terrorist Organization. At the time of the acts alleged, and at all other times relevant hereto, Ari Fuld was a citizen of the United States and at all times relevant hereto, a victim of "torture" as defined in the TVPA and

"personal injury" and "death" as required by 28 U.S.C. § 1605A. Plaintiff Estate of Ari Yoel Fuld can sue and be sued in this Court.

15.     Plaintiff Miriam Fuld was, and at all times relevant hereto, the wife of Ari Fuld and a citizen of the United States. Plaintiff Miriam Fuld has suffered severe mental anguish and extreme emotional pain and suffering. Plaintiff Miriam Fuld can sue and be sued in this Court.

16.     Plaintiff N.S.F. was, and at all times relevant hereto, the son of Ari Fuld and a United States citizen. Plaintiff N.S.F. has suffered severe mental anguish and extreme emotional pain and suffering N.S.F. is a minor born April XX, 20XX who lives with his mother and three siblings. Plaintiff N.S.F. can sue and be sued in this Court.

17.     Plaintiff Naomi Fuld was, and at all times relevant hereto, the daughter of Ari Fuld and a United States citizen. Naomi Fuld has suffered severe mental anguish and extreme emotional pain and suffering Plaintiff N.F. can sue and be sued in this Court.

18.     Plaintiff Tamar Gila Fuld was, and at all times relevant hereto, the daughter of Ari Fuld and a United States citizen. Plaintiff Tamar Gila Fuld has suffered severe mental anguish and extreme emotional pain and suffering. Plaintiff Tamar Gila Fuld can sue and be sued in this Court.

19.     Plaintiff Eliezer Yakir Fuld was, and at all times relevant hereto, the son of Ari Fuld and a United States citizen. Plaintiff Eliezer Yakir Fuld has suffered severe mental anguish and extreme emotional pain and suffering Plaintiff Eliezer Yakir Fuld can sue and be sued in this Court.

20.     Plaintiff Harvey Jonas Yonah Fuld was, and at all times relevant hereto, the biological father of Ari Fuld and a citizen of the United States. Plaintiff Harvey Jonas Yonah Fuld has suffered severe mental anguish and extreme emotional pain and suffering. Plaintiff Harvey Jonas Yonah Fuld can sue and be sued in this Court.

21.     Plaintiff Mary Alice Fuld was, and at all times relevant hereto, the biological mother of Ari Fuld and a citizen of the United States. Plaintiff Mary Alice Fuld has suffered severe mental anguish and extreme emotional pain and suffering. Plaintiff Mary Alice Fuld can sue and be sued in this Court.

22.     Plaintiff Daniel Yaakov Fuld was, and at all times relevant hereto, the biological brother of Ari Fuld and a citizen of the United States. Plaintiff Daniel Yaakov Fuld has suffered severe mental anguish and extreme emotional pain and suffering. Plaintiff Daniel Yaakov Fuld can sue and be sued in this Court.

23.     Plaintiff Eytan Fuld was, and at all times relevant hereto, the biological brother of Ari Fuld and a citizen of the United States. Plaintiff Eytan Fuld has suffered severe mental anguish and extreme emotional pain and suffering. Plaintiff Eytan Fuld can sue and be sued in this Court.

24.     Plaintiff Hillel Chaim Shlomo Fuld was, and at all times relevant hereto, the biological brother of Ari Fuld and a citizen of the United States. Plaintiff Hillel Chaim Shlomo Fuld has suffered severe mental anguish and extreme emotional pain and suffering. Plaintiff Hillel Chaim Shlomo Fuld can sue and be sued in this Court.

**The Goodman Family**

25.     Plaintiff Asher Goodman is a United States citizen who lives in Sderot, Israel located within the Gaza Envelope with his wife and their three children. As a result of the fear and terror brought upon him and his family from the threat of, and exposure to, the rockets, incendiary terror balloons and kites launched from HAMAS controlled Gaza by HAMAS and/or others, Asher Goodman has suffered severe mental anguish and extreme emotional pain and suffering.  Plaintiff Asher Goodman can sue and be sued in this Court.

26.     Plaintiff Batsheva Goodman is a United States citizen who lives in Sderot, Israel located within the Gaza Envelope with her husband and their three children. As a result of the fear and terror brought upon her and her family from the threat of, and exposure to, rockets, incendiary terror balloons and kites launched from HAMAS controlled Gaza by HAMAS and/or others, Batsheva Goodman has suffered severe mental anguish and extreme emotional pain and suffering. Plaintiff Batsheva Goodman can sue and be sued in this Court.

### The Rosenfeld Family

27.     Plaintiff Ephriam Rosenfeld is a United States citizen who lives in Sderot, Israel located within the Gaza Envelope with his wife and their seven children. As a result of the fear and terror brought upon he and his family from the threat of, and exposure to, the rockets, incendiary terror balloons and kites launched from HAMAS controlled Gaza by HAMAS and/or others, Ephriam Rosenfeld has suffered severe mental anguish and extreme emotional pain and suffering. Plaintiff Ephriam Rosenfeld can sue and be sued in this Court.

28.     Plaintiff A.R. is a United States citizen who lives in Sderot, Israel located within the Gaza Envelope with his parents and six siblings. A.R. is a minor born April XX, 20XX. As a result of the fear and terror brought upon him and his family from the threat of, and exposure to, the incendiary rockets, terror balloons and kites launched from HAMAS controlled Gaza by HAMAS and/or others, A.R. has suffered severe mental anguish and extreme emotional pain and suffering. Plaintiff A.R. can sue and be sued in this Court.

29.     Plaintiff B.R. is a United States citizen who lives in Sderot, Israel located within the Gaza Envelope with his parents and six siblings. B.R. is a minor born January XX, 20XX. As a result of the fear and terror brought upon him and his family from the threat of, and exposure to, the rockets, incendiary terror balloons and kites launched from HAMAS controlled Gaza by

HAMAS and/or others, A.R. has suffered severe mental anguish and extreme emotional pain and suffering. Plaintiff B.R. can sue and be sued in this Court.

30.     Plaintiff H.R. is a United States citizen who lives in Sderot, Israel located within the Gaza Envelope with her parents and six siblings. H.R. is a minor born September XX, 20XX. As a result of the fear and terror brought upon her and her family from the threat of, and exposure to, the rockets, incendiary terror balloons and kites launched from HAMAS controlled Gaza by HAMAS and/or others, H.R. has suffered severe mental anguish and extreme emotional pain and suffering. Plaintiff H.R. can sue and be sued in this Court.

**The Vaknin Family**

31.     Plaintiff Bracha Vaknin is a United States citizen who lives with her husband and their five children in the Netivot region of Israel located within the Gaza Envelope. As a result of the fear and terror brought upon her and her family from the threat of, and exposure to, the rockets, incendiary terror balloons and kites launched from HAMAS controlled Gaza by HAMAS and/or others, Bracha Vaknin has suffered severe mental anguish and extreme emotional pain and suffering.  Plaintiff Bracha Vaknin can sue and be sued in this Court.

32.     Plaintiff S.M.V. is a United States citizen who lives in the Netivot region of Israel with his parents and five siblings. S.M.V. is a minor born April XX, 20XX. As a result of the fear and terror brought upon him and his family from the threat of, and exposure to, the rockets, incendiary terror balloons and kites launched from HAMAS controlled Gaza by HAMAS and/or others, S.M.V. has suffered severe mental anguish and extreme emotional pain and suffering. Plaintiff S.M.V. can sue and be sued in this Court.

33.     Plaintiff E.V. is a United States citizen who lives in the Netivot region of Israel with his parents and five siblings. E.V. is a minor born January XX, 20XX. As a result of the fear

and terror brought upon him and his family from the threat of, and exposure to, the rockets, incendiary terror balloons and kites launched from HAMAS controlled Gaza by HAMAS and/or others, E.V. has suffered severe mental anguish and extreme emotional pain and suffering. Plaintiff E.V. can sue and be sued in this Court.

34.     Plaintiff M.V. is a United States citizen who lives in the Netivot region of Israel with her parents and five siblings. M.V. is a minor born April XX, 20XX. As a result of the fear and terror brought upon her and her family from the threat of, and exposure to, the rockets, incendiary terror balloons and kites launched from HAMAS controlled Gaza by HAMAS and/or others, M.V. has suffered severe mental anguish and extreme emotional pain and suffering. Plaintiff M.V. can sue and be sued in this Court.

35.     Plaintiff S.R.V. is a United States citizen who lives in the Netivot region of Israel with her parents and five siblings. S.R.V. is a minor born September XX, 20XX. As a result of the fear and terror brought upon her and her family from the threat of, and exposure to, the rockets, incendiary terror balloons and kites launched from HAMAS controlled Gaza by HAMAS and/or others, S.R.V. has suffered severe mental anguish and extreme emotional pain and suffering. Plaintiff S.R.V. can sue and be sued in this Court.

36.     Plaintiff A.V. is a United States citizen who lives in the Netivot region of Israel with her parents and five siblings. A.V. is a minor born June XX, 20XX. As a result of the fear and terror brought upon her and her family from the threat of, and exposure to, the rockets, incendiary terror balloons and kites launched from HAMAS controlled Gaza by HAMAS and/or others, A.V. has suffered severe mental anguish and extreme emotional pain and suffering. Plaintiff A.V. can sue and be sued in this Court.

**B.  The Defendant**

### The Republic of Sudan

37.     Defendant, the Republic of the Sudan ("Sudan"), is a foreign state within the meaning of 28 U.S.C. § 1603(a) and 28 U.S.C. §1391(f), and a Designated State Sponsor of Terrorism pursuant to the Export Administration Act of 1979, Arms Export Control Act of 1976, and Foreign Assistance Act of 1961.  Defendant Sudan maintains an Embassy within the United States at 2210 Massachusetts Avenue, N.W., Washington, D.C. 20008-2831.

38.     Defendant Sudan was designated as a State Sponsor of Terrorism by the U.S. Department of State on August 12, 1993, and remains so designated at all times referenced herein.

### STATEMENT OF FACTS

### Murder of Max Steinberg

39.     On June 12, 2014, HAMAS kidnapped three teenaged boys at a bus stop in the West Bank.

40.     This kidnapping was the first of many actions HAMAS undertook to launch and maintain an escalated campaign of terror in the summer of 2014.

41.     Saleh Arouri, founder and commander of Izz ad-Din al-Qassam Brigades, HAMAS' military wing, claimed that the kidnapping was an attempt to spark another intifada.

42.     During the First Intifada and Second Intifada, HAMAS carried out hundreds of terrorist attacks in which they intentionally injured and killed American citizens through suicide bombings, shootings and a wide variety of terror activities.

43.     On July 19, 2014, HAMAS terrorist agents slipped into Israel through a tunnel and murdered two Israeli citizens serving in the Israeli Defense Forces ("IDF").

44.     On July 20, 2014, Max Steinberg, an American citizen who had moved to Israel on September 11, 2012 to help in the response to the terror being waged against Israel, and who was serving in the Golani Brigade of the IDF, went to search for rocket launchers and terror tunnels in

Gaza City, in keeping with his mission to help stop terror.

45.     While Max was in Gaza City for this counter-terrorism effort, a member of HAMAS shot at and hit Max's vehicle with an anti-tank rocket.

46.     Max was killed by the terrorists' rocket attack.

### Murder of Eitam Simon Henkin

47.     On October 1, 2015, Eitam Simon Henkin, an American citizen, his wife and four children were driving past the town of Beit Furik when he and his wife were shot and killed.

48.     Eitam Simon Henkin, his wife and four children were driving in their vehicle from a holiday high school reunion past the town Beit Furik when the vehicle was overtaken by three assailants, who shot and wounded Eitam Simon Henkin and his wife. After a wounded Eitam managed to halt the vehicle, the assailants came to the car in an attempt to kidnap the family. After a struggle between Eitam Simon Henkin and one of the assailants, he and his wife were shot and killed in front of their four children.

49.     An investigation revealed that the attack upon Eitam Simon Henkin was carried out by a HAMAS cell. The assailants who planned and conducted the attack were HAMAS operatives Yahia Mihammed Naif Abdullah Hajj Hamad, Samir Zahor Ibrahim Kusah, Karem Lufti Fatahi Razek, Zir Ziad Jamal Amar and Ragheb Ahmad Muhammad Aliwi. Each were arrested and indicted for murder, confessing to the murders and providing details of the attack.

50.     Following the attack, on October 2, 2015 HAMAS leader Mushi al-Masri praised the attack as a "heroic operation" and as a "natural response to the crimes of the enemy."

### Murder of Ari Fuld

51.     On September 16, 2018, Ari Fuld, an American citizen, was stabbed and killed in the Gush Etzion junction in Israel, located adjacent to a community where Israelis, Jews and Americans reside, work, shop and live.

52.     Ari Fuld left his home for a routine shopping trip near the popular Rami Levy supermarket at the Gush Etzion Junction when he was targeted by Khalil Jabarin and stabbed multiple times in the upper back and neck by the terrorist using a 21-centimeter knife. After he was stabbed, he pursued, shot, and wounded the terrorist, who was by that point attempting to also attack a local shop employee.  While the shop employee's life was spared, Fuld, who was transported to the hospital, subsequently died from his fatal injuries.

53.     An investigation revealed that the terrorist who stabbed and murdered Ari Fuld was carried out by HAMAS terrorist -Khalil Yusef Ali Jabarin.  Jabarin was arrested, indicted, and convicted for the murder of Ari Fuld and the attempted murder of three others.

54.     A few hours after the attack, HAMAS praised the attack.

55.     Eventually, HAMAS, through the official website of Al-Qassam Brigades, took responsibility for the terrorist attack by releasing a video.  In the video, the spokesperson for the Al-Qassam Brigades shows pictures of Khalil Jabarin and a video of Jabarin fleeing from the scene of the terrorist attack.  The video includes captions proclaiming that HAMAS' jihadist soldiers will continue their presence in the West Bank and will not leave.

### Goodman Family Terrorist Attacks

56.     Asher and Batsheva Goodman live in Sderot located in the Gaza Envelope and have raised their family there, including three young children, for the last seven years.

57.     They have lived in constant fear of rockets attacks, but there is now a new threat. In addition to rockets flying overhead, the Goodmans are perpetually on the lookout for incendiary balloons and kites as weapons of terror.

58.     The incendiary terror balloons and kites are even more heinous and present a particularly more dangerous threat to the Goodmans. Small children like theirs usually perceive

balloons and kites as toys meant for fun not something intended to harm them.

59.     Asher and Batsheva want their children to enjoy the freedom and innocence of being kids; unfortunately, that is being taken away by HAMAS' reign of rocket, balloon, and kite terror.

60.     Having to explain this situation to their children, along with the numerous experiences of seeing the rockets, incendiary balloons and kites flying overheard, has caused Asher, Batsheva, and their family great emotional distress.

61.     Batsheva and one of her sons have received psychological counseling due to their emotional distress.

62.     As a direct result of the acts of the Defendant, the Goodman Family has suffered damages.

**Rosenfeld Family Terrorist Attacks**

63.     Ephriam and Kineret Rosenfeld moved to Sderot in 1997 where they have raised their seven children.

64.     When the Rosenfelds first moved, Sderot was a small, quiet, developing town near the Gaza border. This tranquility lasted until around 2001, when during the Second Intifada HAMAS began firing rockets at the town.

65.     The Rosenfelds have been living under a constant siege of rockets ever since 2001; in recent years their safety has been threatened by HAMAS terror devices launched from Gaza. The past two years have forced the Rosenfelds to not only live with rocket barrages, but now Ephriam, Kineret, and their children have been made to fear children's toys – terror kites and balloons.

66.     In addition to constant fear of rockets, the Rosenfelds are now under constant threat

of attacks from incendiary terror balloons and kites.

67.     Ephriam and Kineret have had to explain to their young children that what was once exciting, kites and balloons, is now a grave threat. The Rosenfelds have had to teach their children that balloons and kites are dangerous; it is nearly impossible for the children to enjoy kites and balloons in any context, even when they know the origin of the kite or balloon, there is still a deep fear.

68.     On Saturday, July 14, 2018, nearly twenty years after moving to Sderot, the Rosenfeld's home was hit by a HAMAS rocket. Fortunately, no one was inside at the time or physically injured. However, the damage to their home was significant and the resulting emotional distress of the entire family is even worse.

69.     At the time of the attack, Ephriam was at synagogue. He was informed by another congregant that his house had been hit by a rocket.

70.     On Ephriam's frantic walk back home, he was frantically looking for shelters for cover in case there were more rockets fired.

71.     Ephriam will never forget the scene he encountered when he got home.

72.     The windows were blown out of their building, requiring replacement, along with other devastating damage; and their backyard had to be repaired. The building floor was full of blood and water as broken pipes carried the blood of Ephriam's neighbors into public areas. The entire building smelled like something had been severely burned.

73.     Kineret was already home by the time Ephriam returned. She had been drinking coffee and enjoying some light reading in their parking lot when the warning sirens rang and the rocket hit their home.

74.     Kineret bravely found her neighbor and comforted her. Afterwards, Kineret herself

needed help as she was compulsively shaking.

75.     Ephriam and Kineret made the decision to send their young children living at home, to Kineret's parent's home while the two of them suffered through the initial chaos that ensued after the rocket attack.  The windows have been repaired, the building repainted, and the blood cleaned, but Ephriam and Kineret can do nothing about the terror under which their children are forced to live.

76.     A.R., their twelve year-old son, underwent extensive therapy for six months following the rocket attack due to emotional distress and constant fear he feels, no longer in counseling.

77.     Their youngest son, B.R. who is nine years old, started counseling in August 2019, after having to wait for an extensive time because of the long waiting list to receive counseling from the counseling center located in Sderot. He has a hard time sleeping, he frequently has bad dreams, and on weekends, he refuses to leave the house even to go outside and play with friends.

78.     As a direct result of the acts of the Defendant, the Rosenfeld Family has suffered damages.

**<u>Vaknin Family Terrorist Attacks</u>**

79.     Bracha and Yosef Vaknin live in Netivot, located in the Gaza Envelope and have raised their family there, including five young children, for the last ten years.

80.     Their home is less than 13km from forests which have been burned as a result of the incendiary terror balloons and kites which have been landed in this area.

81.     They have lived in constant fear of rockets attacks, but there is now a new threat. In addition to rockets flying overhead, the Vaknin's are perpetually on the lookout for incendiary balloons and kites as weapons of terror.

82.     The incendiary terror balloons and kites are even more heinous and present a particularly more dangerous threat to the Vaknin's small children like theirs usually perceive balloons and kites as toys meant for fun not something intended to harm them.

83.     In addition, the Vaknin Family has been unable travel freely between their home and neighboring towns such as Sderot and Ashkelon. Frequently in the fall of 2018, highway 34, the main thoroughfare connecting these towns is shut down because of fires and smoke which obstruct the highway.  This is particularly problematic for Yosef, as his employment requires him to travel to Ashkelon.

84.     Bracha and Yosef want their children to enjoy the freedom and innocence of being kids; unfortunately, that is being taken away by HAMAS' reign of rocket, balloon, and kite terror.

85.     Having to explain this situation to their children, along with the numerous experiences of seeing the rockets, incendiary balloons and kites flying overheard, has caused Bracha and Yosef, and their family great emotional distress.

86.     As a result of the rocket fire and constant fear of fires, the Vaknin children have experienced extreme psychological symptoms of anxiety including bed-wetting, nightmare, hyperactivity and anger.

87.     Bracha and Yosef have sought mental health counseling for two of their sons. While they have received some treatment, the fear anxiety continues to affect them today including in their education and speech development.

88.     Since the launchings of the incendiary terror balloons and kites the Vaknin children have all regressed mentally and emotionally.  Seeing the balloons, kites and fires has caused each of them extreme mental anguish.

89.     As a direct result of the acts of the Defendant, the Vaknin Family has suffered

damages.

## HAMAS

90.      HAMAS is the Islamic Resistance Movement and is a primarily radical Islamist terrorist organization that is committed to the globalization of Islam through violent "Jihad", which means "holy war".

91.      HAMAS is formally committed to the destruction of the State of Israel, a sovereign nation, is extremely anti-American, rejects achieving a peaceful resolution between Israel and the Palestinians and is committed to achieving its objectives by violent means, including acts of international terrorism.

92.      HAMAS is an acronym for "Harakat Muqawama Islamiyya," which was founded in December 1987.

93.      The HAMAS political documents call for the establishment of an Islamic Palestinian state throughout and in place of Israel by eliminating the State of Israel through violent jihad.

94.      HAMAS propaganda since the September 11, 2001 World Trade Center attacks has praised and glorified Osama bin Laden and his supporters engaged in global jihad.

95.      Through its military wing, Izz ad-Din al-Qassam Brigades ("Al-Qassam Brigades"), HAMAS commits criminal activity, including murder, attempted murder, solicitation to commit murder, and numerous other acts of international terrorism, as defined by 18 U.S.C. § 1331, in violation of the criminal code of the United States.

96.      On January 25, 1995, HAMAS was designated as a Specially Designated Terrorist organization and, on October 8, 1997, by publication in the Federal Register, the United States Secretary of State designated HAMAS as a Foreign Terrorist Organization pursuant to Section 219 of the Immigration and Nationality Act as amended by the Antiterrorism and Effective Death Penalty Act of 1996. HAMAS is also designated as a Specially Designated Global Terrorist Organization.

97.     HAMAS has also committed kidnapping and hostage taking in order to put pressure on the Israeli and American governments, consistent with its terror activities and its total rejection of peace with Israel.

98.     Between 1999 and the date of the terrorist attacks at issue in this case, the courts of the United States, including this Court, have published a number of decisions finding that HAMAS was responsible for terrorist attacks in which American and Israeli citizens were killed or injured.

99.     HAMAS recruits young people in high schools and on university campuses to be terrorists and commit single acts of terror including attacks on individual Israelis, Americans and Jews who are living or working or shopping in the towns and villages adjacent to or within the areas of the West Bank of the Jordan River.

100.     In recent years, stabbing attacks by single HAMAS terrorists have emerged as the most common type of terrorist attack in the West Bank.

101.     In 2018, stabbing attacks were at the peak of HAMAS terrorist activity.  HAMAS was actively trying to show that not only could it commit terror at the security border between Israel and the Gaza Strip where HAMAS was in control, but it also could commit terror along the areas of the towns and villages adjacent to or in the West Bank, with operations designed to launch terrorism against Jews, Israelis, Americans and the rest of the civilian population living, working, shopping or visiting in the West Bank area.

102.     During the First Intifada and Second Intifada and continuing until today, HAMAS carried out hundreds of terrorist attacks intentionally injuring and killing American citizens through suicide bombings, shootings, stabbings, rocket attacks, the launching of incendiary terror devices,  car rammings, and a wide variety of other terror activities.  HAMAS not only encourages these attacks, but is proud of the attackers, who become celebrated martyrs who have received incentives and rewards for having committed acts of murder and other acts of international terror.

**SUDAN'S DESIGNATION AS A STATE SPONSOR OF TERRORSIM**

**AND SUPPORT OF HAMAS**

103.    In 1997, four years after Sudan was designated as a state sponsor of terrorism, then Senator John Ashcroft, during a Senate hearing titled "Sudan and Terrorism," summarized why Sudan was designated as a state sponsor of terrorism and reviewed Sudan's unwavering commitment to sponsoring terrorism even after it was designated:

> One of the most serious of these new national security threats is the rise of international terrorism. We are holding this hearing today in the Subcommittee on African Affairs to address the menace of terrorism as sponsored by the Government of Sudan. Since first being designated a State sponsor of terrorism in 1993, Sudan has risen quickly in the ranks of infamy to join Iran as the worst of State sponsors of terrorism.
>
> Sudan harbors elements of the most violent terrorist organizations in the world….
>
> In addition to harboring terrorist organizations, Sudan has given refuge to several of the most notorious terrorists, including Imad Moughniyeh and Osama Bin Laden….
>
> Sudan is not simply a favorite vacation spot for terrorists. The Sudanese Government is an active supporter of these terrorist activities[1]

104.    Upon information and belief, over the years Sudan was transformed into a regional base for Hamas, where many of the group members resided and were offered Sudanese passports with which they could travel.

105.    Sudan was the nerve center of Hamas activity in Africa until at least late 2014

106.    As recently as October 5, 2020, Ali Hashem, a Hamas leader confirmed that "Sudan has never failed us in Palestine at any level, --the resistance level, political level, diplomatic level"[2]

---

[1] Opening Statement of John Ashcroft, *Sudan and Terrorism,* Hearing before the Subcommittee on African Affairs of the Committee on Foreign Relations, United States Senate, One Hundred and Fifth Congress, First Session, S. Hrg 105-223, May 15, 2007.

[2] *Al-Monitor*, October 5, 2020, https://www.al-monitor.com/pulse/originals/2020/10/hamas-leader-uae-israel-sudan-normalization-kadoomi.html#ixzz6aregeRI3

107.    Sudan's support of Hamas has also been confirmed by the United States Department of State.  In the State Department's annual report on terrorism, first prepared in 1985 and known as "Country Reports on Terrorism" presented  the following relevant findings have been confirmed:

-      2012 - In November, Hamas political chief Khaled Meshal visited Khartoum during a meeting of Sudan's Islamic Movement, and Meshal met with several senior members of the Sudanese government during his visit. In addition the Report confirmed that arms smuggling transited into Gaza to Palestinian terrorist organizations and that Israeli officials were concerned about the smuggling of weapons from Libya via Sudan into Hamas' controlled Gaza.

-      2013 - In 2013, the report emphasized that Sudan continued to allow members of Hamas to travel, fundraise, and live in Sudan.  The Report again reiterated that Israeli officials remained concerned about the smuggling of weapons from Libya via Sudan into Gaza.

-      2014 - The State Department did not change its report on Sudan.  In 2014, the Report concluded Sudan continued to allow members of Hamas to travel, fundraise, and live in Sudan.

108.    Although the Government of Sudan has made some progress in opposing terrorist financing, members of Hamas were permitted to continue to conduct fundraising in Sudan.

109.    In addition, because of the historical support that Sudan provided to Hamas, Hamas was able to continue to maintain its status and support and conduct terrorist attacks which killed and injured the Plaintiffs in this action.

110.    Accordingly, Sudan's actions both leading up to and during the relevant time periods sufficiently demonstrate that material support was provided in the way of weapons smuggling, financial support, and provision logistical support bolstered the operational capacity of Hamas.

**COUNT I**
**Under 28 U.S.C. §1605A(c)**
**(on behalf of All Plaintiffs)**

111.    Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in all the foregoing paragraphs as if fully set forth herein.

112.     As recounted above, the deaths of Max Steinberg, Eitam Simon Henkin, Ari Fuld and the emotional and other injuries to each of the Goodman Plaintiffs, Rosenfeld Plaintiffs and Vaknin Plaintiffs, were caused by a willful and deliberate act of terror committed by HAMAS, a Foreign Terrorist Organization, with the material aid and support of the Defendant Sudan. Sudan, rendered material support to the activities of HAMAS that resulted in the murders of Max Steinberg, Eitam Simon Henkin and Ari Fuld and  the emotional and other injuries to each of the Goodman Plaintiffs, Rosenfeld Plaintiffs and Vaknin Plaintiffs, all US nationals.

113.     As a direct and proximate result of the willful, wrongful and intentional acts of the Defendant hereinabove described, for which the Defendant is vicariously liable, each of the Plaintiffs, each being a US national, have endured extreme mental anguish, death and/or physical injury, pain and suffering, solatium, and loss of the affection, love and companionship of their loved one, for which the Plaintiffs and each of them seek an award of damages and judgment against the Defendants, to the fullest extent of the law.

114.     WHEREFORE, each of the Plaintiffs demand that judgment be entered, jointly and severally, against the Defendant, Republic of Sudan, for the damages they suffered, including, but not limited to, pain, suffering, mental anguish, emotional distress, and solatium in such amounts as shall be proven at trial, and for their costs expended, including attorneys' fees, and as otherwise as permitted by this Court.

## COUNT II
## LOSS OF SOLATIUM
### (On behalf of all Plaintiffs-Except the Estate of Max Steinberg and Estate of Ari Fuld)

115.     The Plaintiffs repeat and re-allege each and every allegation set forth above with like effect as if alleged herein.

116.    As a direct and proximate result of the willful, wrongful, intentional, and reckless acts of the Defendants, their agents and instrumentalities, each of the Plaintiffs suffered extreme mental anguish, emotional pain and suffering, and the loss of the society and companionship of the victims.

117.    Accordingly, each of the Plaintiffs being a US national bring claims for loss of solatium against the Defendant, pursuant to 28 U.S.C. § 1605A(c), or, in the alternative, under the laws of the District of Columbia.

118.    WHEREFORE, each of the Plaintiffs demand that judgment be entered against the Defendants and each of them, jointly and severally, in an amount to be proven at trial for their compensatory damages, and otherwise as permitted by this Court.

## COUNT III
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (On behalf of all of the Plaintiffs-Except the Estate of Max Steinberg and the Estate of Ari Fuld)

119.    The Plaintiffs repeat and re-allege each and every allegation set forth above with like effect as if alleged herein.

120.    The act of the Defendant as set forth constitute extreme and outrageous conduct on the part of HAMAS, whose acts were funded, directed and/or materially supported by the Republic of Sudan.

121.    As a direct and proximate result of the willful, wrongful, intentional, and reckless acts of HAMAS and its terrorists who were funded, directed and/or materially supported by the Republic of Sudan, Plaintiffs suffered severe emotional distress, entitling them to an award of compensatory damages.

122.    Each Plaintiff may assert a cause of action for intentional infliction of emotional distress against the Defendant in connection with the willful, wrongful, intentional, and reckless actions of HAMAS terrorists.  Such cause of action may be asserted pursuant to 28 U.S.C. § 1605A(c), or, in the alternative, under the laws of the District of Columbia.

123.    WHEREFORE, Plaintiffs demand that judgment be entered against the Defendant, in an amount to be proven at trial for their compensatory damages, and otherwise as permitted by this Court.

**COUNT IV**
**PUNITIVE DAMAGES**
**Under 28 U.S.C. § 1605A(c)**
**(on behalf of all Plaintiffs)**

124.    The Plaintiffs repeat and re-allege each and every allegation set forth above with like effect as if alleged herein.

125.    The actions of the Republic of Sudan, who has been committing, sponsoring, and supporting acts of international terror against Americans and others at least since the early 1990s, and certainly since 1993 when it was designated as a State Sponsor of Terror; are heinous in nature, politically motivated, and target the United States of America and abroad, its citizens, residents and visitors, thereby rendering the Defendant liable for the heinous murders of Max Steinberg, Eitam Simon Henkin and Ari Fuld, and the emotional and other injuries to each of the Goodman Plaintiffs, Rosenfeld Plaintiffs and Vaknin Plaintiffs, thereby entitling each of the Plaintiffs, to an award of damages as shall be determined at trial and in accordance with the laws of the United States.

126.    The acts of the Defendant carried out by their agents as described above, were malicious, willful, unlawful and in wanton disregard of life and the standards of law that govern the actions of civilized nations. The loss of life and the injuries as above described were intended as a result by the Defendant. The Plaintiffs are each victims of the acts of international terror committed by HAMAS with the material support of the Defendant. In accordance with the provisions of 28 U.S.C §1605A(c), the Plaintiffs are thereby entitled to a maximal award of punitive damages to the fullest extent of the law.

127.    The actions of HAMAS, as set forth hereinabove, were intentional and malicious and in willful, wanton, and reckless disregard of the rights and physical well-being of Max Steinberg, Eitam Simon Henkin and Ari Fuld and each of the Goodman Plaintiffs, Rosenfeld Plaintiffs and Vaknin Plaintiffs. The actions of HAMAS were part of its ongoing and continuing campaign of terror committed against citizens of the United States of America and the State of Israel in support of the political goals and aims of HAMAS to reject peace with Israel, to oppose US foreign policy in the region, and to use terror as a means of destroying the State of Israel, consistent with the foreign policy positions of the Defendant, the Republic of Sudan, who is an avowed enemy of Israel and oppose US foreign policy in the region. The acts of HAMAS were facilitated through material support for terrorism provided by Sudan. This Court has previously found the Defendant liable for the support of other Foreign Terrorist Organizations. Notwithstanding said findings, the Defendant Sudan has continued to sponsor and support terror. The Defendant must be punished by this Court for their acts of sponsorship of terror.

128.    WHEREFORE, the Plaintiffs pray that judgment be entered against the Republic of Sudan, on behalf of each Plaintiff, in the amount of one billion US Dollars ($1,000,000,000) for the Plaintiffs, as against the Defendant, and their costs herein expended.

## PRAYER FOR RELIEF

129.    WHEREFORE, Plaintiffs, request this Court find the Defendant, the Republic of Sudan, liable for the acts alleged herein and enter Judgment against the Defendant as follows:

a.    Awarding Plaintiffs, and each of them, compensatory damages against Defendant the Republic of Sudan, in amounts to which they are entitled by law and as shall be determined at trial in accordance with evidence to be submitted to this Court;

b.    Awarding Plaintiffs to the immediate family members of the decedents, and each

of them, solatium damages against the Defendant, in amounts to which they are entitled by law and as shall be determined at trial in accordance with evidence to be submitted to this Court;

      c.     Awarding Plaintiffs punitive or exemplary damages against Defendant Sudan, in the amount of one billion US dollars ($1,000,000,000) as punishment for its sponsorship of acts of terror against Americans;

      d.     Awarding Plaintiffs their costs and disbursements and reasonable allowances of reasonable fees for Plaintiffs counsel and experts and reimbursement of expenses;

      e.     Leave to amend this First Amended Complaint as the interests of justice may allow;

      f.     Granting any and all such further and other relief as the Court may deem just and proper.

Dated: November 20, 2020          Respectfully submitted,

                                 Heideman Nudelman & Kalik, P.C.
                                 1146 19th Street, NW, Fifth Floor
                                 Washington, DC 20036
                                 (202) 463-1818

                                 By: */s/Richard D. Heideman*
                                     Richard D. Heideman (DC Bar No. 377462)
                                     Noel J. Nudelman (DC Bar No. 449969)
                                     Tracy Reichman Kalik (DC Bar No. 462055)

                                 *On behalf of all Plaintiffs*

                                 Jeffrey Fleischmann(to be admitted *pro hac vice*)
                                 Law Offices of Jeffrey Fleischmann, PC
                                 150 Broadway, Suite 900
                                 New York, NY  10038
                                 (646) 657-9623

                                 Samuel Silverman (to be admitted *pro hac vice*)
                                 The Silverman Law Firm
                                 16 Squadron Blvd
                                 New City, NY 10956
                                 (845) 517-0351

Of Counsel to be admitted *pro hac vice*
*Only on behalf of The Estate of Ari Yoel Fuld,*
*Miriam Fuld, N.S.F., Naomi Fuld, Tamar Gila Fuld*
*and Eliezer Yakir Fuld*