# Exhibit A

TREATIES AND OTHER INTERNATIONAL ACTS SERIES 21-209

## CLAIMS AND DISPUTE RESOLUTION

**Agreement Between the**

**UNITED STATES OF AMERICA**

**and SUDAN**

with Side Letter

Signed at Washington October 30, 2020

Entered into force February 9, 2021



NOTE BY THE DEPARTMENT OF STATE

Pursuant to Public Law 89—497, approved July 8, 1966 (80 Stat. 271; 1 U.S.C. 113)—

". . .the Treaties and Other International Acts Series issued under the authority of the Secretary of State shall be competent evidence . . . of the treaties, international agreements other than treaties, and proclamations by the President of such treaties and international agreements other than treaties, as the case may be, therein contained, in all the courts of law and equity and of maritime jurisdiction, and in all the tribunals and public offices of the United States, and of the several States, without any further proof or authentication thereof."

# CLAIMS SETTLEMENT AGREEMENT

# BETWEEN

# THE GOVERNMENT OF THE UNITED STATES OF AMERICA

# AND

# THE GOVERNMENT OF THE REPUBLIC OF THE SUDAN

*The Government of the United States of America*

*And*

*The Government of the Republic of the Sudan,*

**Wishing** *to further develop the relations between their two countries in a spirit of friendship and cooperation, especially in light of Sudan's ongoing transition to democracy;*

**Recognizing** *and condemning the horrific nature of the 1998 bombings of the U.S. Embassies in Nairobi, Kenya, and Dar es Salaam, Tanzania, and the 2000 attack on the U.S.S. Cole, and expressing deepest sympathies for victims;*

**Acknowledging** *that certain victims of these attacks have asserted claims in U.S. courts against Sudan in relation to these attacks;*

***Acknowledging*** *that while Sudan denies any involvement in these attacks, it has been willing to address these claims as part of its effort to fully normalize relations with the United States;*

***Acknowledging*** *that Sudan has already paid compensation pursuant to certain private settlements to a number of victims of the 2000 attack on the U.S.S. Cole;*

***Recognizing*** *Sudan's willingness to address additional claims arising out of the bombings of the U.S. Embassies and the attack on the U.S.S. Cole and Sudan's goal of having its immunities restored to those of a state not designated as a state sponsor of terrorism and barring and precluding suits and actions with respect to such claims from the jurisdiction of courts in the United States of America; and*

***Recognizing*** *that the continued normalization of relations is a matter of great importance to the relationship between the two countries,*

*Have agreed on the following:*

## ARTICLE I

For purposes of this Agreement:

1. Reference to "Sudan" shall mean the Republic of the Sudan, the Government of the Republic of the Sudan, any agency or instrumentality of the Republic of the Sudan, and any official, employee, or agent thereof acting within the scope of his or her office, employment, or agency.

2. Reference to the "United States" (or "U.S.") shall mean the United States of America, the Government of the United States of America, any agency or instrumentality of the United States of America, and any official, employee, or agent thereof acting within the scope of his or her office, employment, or agency.

3. For greater certainty, reference to "U.S. nationals" shall mean natural and juridical persons who were nationals of the United States at the time their claim arose and through the date of entry into force of this Agreement, and reference to "foreign nationals" shall mean all other natural and juridical

persons, including those who were not nationals of the United States at the time their claims arose but have since become nationals of the United States.

## ARTICLE II

The objective of this Agreement is to reach a comprehensive settlement that:

1. settles the claims of the United States of America and, through espousal, those of U.S. nationals;

2. provides meaningful compensation in connection with claims of foreign nationals employed or performing a contract awarded by the United States and establishes a fair process through which to distribute compensation for such claims; and

3. bars and precludes all U.S. national and foreign national suits and actions (including suits and actions with judgments that are still subject to appeal or other forms of direct judicial review, as well as suits or actions to wholly or partially satisfy final judgments through execution or attachment) and future suits and actions in the courts of the United States of America through legislation providing to Sudan the sovereign, diplomatic and official immunities normally provided by the United States to other states

if such claims, suits, or actions are against Sudan or, where the claims, suits, or actions implicate in any way the responsibility of Sudan, against Sudan's nationals; and such claims, suits, or actions are brought by or on behalf of U.S. nationals or such claims, suits, or actions are brought by or on behalf of foreign nationals; and such claims, suits, or actions arise from personal injury (whether physical or non-physical, including emotional distress), death, or property loss caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking or detention or other terrorist act, or the provision of material support or resources for such an act, occurring outside of the United States of America and prior to the date of execution of this Agreement.

# ARTICLE III

1. Upon entry into force of this Agreement, the Government of the United States of America confirms the enactment of legislation that Sudan may invoke, upon the receipt by the United States of the funds referred to in Paragraph 2 of this Article, that:

    a. provides the same sovereign, diplomatic, and official immunity to Sudan and its property and to its agencies, instrumentalities, officials, and their property, as is normally provided by the United States to other states and their property and to their agencies, instrumentalities, officials, and their property; and

    b. bars and precludes all suits and actions specified in Article II of this Agreement pending in the courts of the United States of America whether brought by or on behalf of U.S. nationals or foreign nationals (including suits or actions with judgments that are still subject to appeal or other forms of direct judicial review, as well as any pending suits or actions to wholly or partially satisfy final judgments through execution or attachment) and future suits and actions specified in Article II.

2. The Government of the Republic of the Sudan shall transfer to the Government of the United States a payment of U.S.$335,000,000, as the basis for settling the claims and the legislation barring and precluding the suits and actions specified in Article II of this Agreement, to be used by the Government of the United States of America for making distribution payments as specified in the annex to this Agreement ("Annex").

3. In accordance with the applicable domestic procedures of the United States of America, the Government of the United States of America shall deposit amounts received from the Government of the Republic of the Sudan pursuant to this Agreement into an interest-bearing account in the United States Treasury until distribution pursuant to a determination by the Secretary of State of the United States of America ("Secretary") or a designee of the Secretary.

## ARTICLE IV

1. The Government of the United States of America shall accept the funds specified in Article III(2) of this Agreement for distribution as a full and final settlement of its claims, suits, and actions and, through espousal, those of U.S. nationals as specified in Article II of this Agreement, and for payment of compensation, as specified in Article II, to resolve claims, suits, and actions of foreign nationals.

2. Upon receipt of the funds from the Government of the Republic of the Sudan specified in Article III(2) of this Agreement, the Government of the United States of America:

    a. Shall certify that Sudan has made final payment of the funds to the United States in accordance with any certification requirement set forth in the legislation referred to in Article III(1) of this Agreement.

    b. Shall take action as appropriate and necessary, consistent with its constitutional structure, to help bring about the success of Sudan's efforts to secure

        i. the termination of legal proceedings in U.S. federal or state courts involving any claims, suits, or actions specified in Article II of this Agreement, regardless of the nationality of the claimant; and

        ii. the nullification of any and all attachments and measures in support of attachments, and the vacatur of any judgments rendered by a U.S. federal or state court,

    consistent with the legislation referred to in Article III(1) of this Agreement.

    c. Shall avoid any action that:

        i. contradicts the terms of this Agreement, and in particular challenges the sovereign immunity of Sudan concerning any of

   the claims, suits, or actions specified in Article II of this Agreement; or

  ii. stands as an obstacle to the accomplishment and execution of this Agreement.

d. Shall release and finally discharge Sudan from all espoused U.S. national claims that come within Article II of this Agreement and shall refrain from presenting any such claim to Sudan, on its behalf or on behalf of another, in the future. Consistent with this release and final discharge, if any such claim is presented directly by a U.S. national to Sudan in the future, Sudan shall have no responsibility for the claim and should refer it back to the Government of the United States of America.

e. Before making any distribution payment, pursuant to this Agreement, to an eligible recipient on an espoused claim of a U.S. national, shall require the recipient to execute a writing that includes a waiver and release of all the recipient's rights to assert claims for compensatory or other relief in any form or to enforce any judgment against Sudan in connection with any claim, suit, or action specified in Article II of this Agreement.

f. Before making any distribution payment, pursuant to this Agreement, to an eligible recipient in connection with any other claim, shall require the recipient to execute a writing that includes a waiver and release of all the recipient's rights to assert claims for compensatory or other relief in any form or to enforce any judgment against Sudan in connection with any claim, suit, or action specified in Article II of this Agreement.

## ARTICLE V

The Annex attached hereto is an integral part of this Agreement. This Agreement shall enter into force on the date of the later note in an exchange of diplomatic notes between the Government of the United States of America and the Government of the Republic of the Sudan confirming the completion of any internal procedures necessary for the entry into force of this Agreement, which in

the case of the United States, shall include enactment of the legislation described in Article III(1).

In Witness whereof, the undersigned, being duly authorized by their respective Governments, have signed this Agreement.

**DONE** at Washington, D.C., on this 30th day of October, 2020, in duplicate, in the English language.

FOR THE GOVERNMENT OF THE UNITED STATES OF AMERICA:

FOR THE GOVERNMENT OF THE REPUBLIC OF THE SUDAN:

# ANNEX

1. The Government of the United States of America and the Government of the Republic of the Sudan, in furtherance of their Claims Settlement Agreement (the "Agreement"), of which this Annex is an integral part, have agreed that the Government of the United States of America shall make distributions from the Funds transferred pursuant to Article III of the Agreement as follows:

   a. to compensate U.S. nationals whose claims have been espoused by the United States of America pursuant to the Agreement and to the payment of private settlements related to certain claims in the following cases:

      i. *Owens v. Republic of Sudan* (D.D.C.), 01-cv-2244 (JDB)

      ii. *Khaliq v. Republic of Sudan* (D.D.C.), 10-cv-356 (JDB)

      iii. *Taitt v. Islamic Republic of Iran* (D.D.C.), 20-cv-1557 (RC)

      iv. *Granville v. Republic of Sudan*, Case No. 2018-28, in the Permanent Court of Arbitration

   b. to the payment of a private settlement related to *Mwila v. The Islamic Republic of Iran* (D.D.C.), 08-cv-1377 (JDB); and

   c. to fund a process (as set forth below) to distribute compensation to eligible foreign nationals whose claims have been addressed by the Agreement:

      i. Definitions

         A. For purposes of section (c) of this Annex--

            (1) "Applicable Litigation" means any suit or action in the following cases:

               *Wamai v. Republic of Sudan* (D.D.C.), 08-cv-1349 (JDB)

               *Amduso v. Republic of Sudan* (D.D.C.), 08-cv-1361 (JDB)

               *Onsongo v. Republic of Sudan* (D.D.C.), 08-cv-1380 (JDB)

*Opati v. Republic of Sudan* (D.D.C.), 12-cv-1224 (JDB)

(2) "Embassy Bombings" means the August 7, 1998 bombings of the U.S. embassies in Dar es Salaam, Tanzania, and Nairobi, Kenya.

(3) "Party" means the Republic of the Sudan or the United States of America. "Parties" means the Republic of the Sudan and the United States of America.

(4) "Release" means a document signed by the claimant in which the claimant agrees that, upon the receipt of compensation based on a determination by the Commission, the claimant fully, finally, and forever waives and releases any claims against Sudan or the United States related to the Agreement and the Embassy Bombings.

ii. Commission

  A. Establishment. The Government of the Republic of the Sudan shall establish, in consultation with the United States of America, a Commission in a jurisdiction mutually agreeable to Sudan and the United States.

  B. Appointment. The Government of the Republic of the Sudan shall nominate one person to be sole commissioner of the Commission ("Commissioner") and shall notify the United States of its nomination in writing. If the United States does not object within seven (7) calendar days of written notice of such nomination, the person nominated shall be duly appointed as the sole Commissioner of the Commission without any further action from either Party. A Commissioner may also be appointed, and an appointed Commissioner may be replaced, by the joint agreement of the Parties.

  C. Administrative Fees. U.S.$2,000,000 shall be allocated for the administrative fees of the Commission. Following the receipt of the funds specified in Article III(2) of the Agreement, the Government of the United States of America shall establish procedures to transfer funds from this allocated U.S.$2,000,000 to the Commission for the payment of administrative fees.

iii. Eligible Claims

    A. <u>Criteria</u>. The Commission shall determine claimant eligibility for awards consistent with the following criteria.

        (1) A claimant may not have otherwise received compensation originating from the amounts transferred pursuant to Article III(2) of the Agreement.

        (2) A claimant is only eligible to receive compensation for one claim matching the criteria in this subsection (A).

        (3) A claimant must be a named plaintiff awarded compensatory damages in an Applicable Litigation related to the wrongful death or injury of a foreign national.

        (4) A claimant may not receive compensation unless the Applicable Litigation in which the claimant is a plaintiff has been dismissed with prejudice as to that claimant's claims against Sudan as a defendant and any judgment in favor of the claimant against Sudan in the Applicable Litigation has been vacated. The Commission may make determinations of eligibility pending receipt of confirmation that the Applicable Litigation has been dismissed with prejudice as to Sudan as a defendant and judgments against Sudan in the Applicable Litigation vacated.

        (5) A claimant must provide two signed original Releases.

        (6) A claim falls within one of the categories of eligible claims, as follows:

            (a) <u>Estate Claim</u>. A claim by a legal representative of an estate for wrongful death caused by the Embassy Bombings. The Commission shall require proof of a putative legal representative's entitlement to collect on behalf of the applicable estate.

            (b) <u>Injury Claim</u>. A claim by an individual for a discernible injury sustained in connection with the Embassy Bombings (other than an injury sustained as a result of a claimant's familial relationship with an individual

killed or injured by the Embassy Bombing). In the event that a claimant can demonstrate good cause for a lack of available medical records, the Commission may, in its discretion, accept other records to verify the individual's injuries.

 (c) <u>Non-Beneficiary Family Members Claim</u>. A claim for mental pain and anguish by a family member of a foreign national killed in the Embassy Bombings provided that the claimant is (1) living at the time the claimant applies to the Commission for compensation and (2) not eligible to receive compensation through an Estate Claim as a beneficiary of the estate of such foreign national.

B. <u>Award Amounts</u>. The amount of compensation to be distributed to a claimant based on the category of eligible claim is as follows:

(1) <u>Estate Claims</u>: U.S.$800,000 per claim

(2) <u>Injury Claims</u>: U.S.$400,000 per claim

(3) <u>Non-Beneficiary Family Member Claims</u>: U.S.$100,000 per claim

iv. Process

A. <u>Applications</u>. The Commission shall establish procedures for claimants to apply for compensation for eligible claims. The Commission shall notify the counsel of record in the cases listed in the definition of Applicable Litigation and the authorized representative of each Party of the procedures within sixty (60) days of the appointment of the sole Commissioner. The procedures shall include a deadline for claimants to apply for compensation that is not later than ninety (90) days following the posting of the application procedures to the counsel of record by registered mail. The Commission shall report the total number of claimants and the number of claimants by category of claim to both Parties no later than thirty (30) days following the deadline for claimants to apply for compensation.

B. <u>Determinations</u>. Determinations of the Commission shall be made by the sole Commissioner. Determinations of the Commission shall be final and not subject to judicial review.

The Commission may establish procedures for review of eligibility determinations by the Commission and the submission of supplemental information to the Commission. Any review of a determination shall be completed by the Commission within ninety (90) days of the initial determination. If sufficient funds remain to support the administrative functions of the Commission, the Commission may extend the period available to review determinations consistent with any other applicable deadlines for completion of the Commission's work.

C. <u>Notice and Payments</u>. The Commission shall inform the authorized representative of each Party of the Commission's determinations, which shall include the category of eligible claim, amount of compensation to be awarded, and a description of how the claim is consistent or inconsistent with the criteria for eligible claims listed above and the standards adopted by the Commission. The Commission shall make determinations on a rolling basis.

If a claim is determined eligible for compensation, the Commission shall request payment instructions from the claimant. Upon the Commission's receipt of such payment instructions, the Commission shall transmit one executed original of the Release of the claimant to each Party.

The Government of the United States of America shall establish procedures to transfer funds to an eligible claimant following receipt from the Commission of the Commission's determination, including the requisite description, the category of eligible claim, and the amount of compensation; an executed original Release; and payment instructions.

v. Miscellaneous

A. <u>Report</u>. The Commission shall prepare and deliver a final "Report" of the Commission's activities to the Parties within

twenty-five (25) months of the appointment of the sole Commissioner.

B. <u>Termination</u>. The Commission shall terminate one (1) month following the issuance of the Report.